BAILEY & ASSOCIATES, INC., Plaintiff-Appellee and Cross-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellants and Cross-Appellees.

Fourth District    No. 4—94—0712

Argued December 14, 1995.—Opinion filed June 16, 1997.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Daniel N. Malato, Assistant Attorney General (argued), of counsel), for appellants.

Robert E. Easton (argued) and Thomas H. Morsch, both of Sidley & Austin, of Chicago, and Michael B. White, of Litchfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

This appeal involves a dispute between the plaintiff, Bailey and Associates, Inc. (Bailey), and the defendants, Illinois Department of Employment Security (Department) and Loleta A. Didrickson, its previous Director. At issue in this case are the Director's determinations under the Unemployment Insurance Act (Act) (see Ill. Rev. Stat. 1991, ch. 48, par. 300 *et seq.*), holding Bailey had to pay contributions under the Act for salespeople who sold memberships in campgrounds owned and operated by Bailey. In three decisions the Director determined these individuals were employees of Bailey, rather than exempt as independent contractors (see Ill. Rev. Stat. 1991, ch. 48, par. 322), and consequently were not exempt for the purposes of unemployment contributions. *Director of Employment Security v. Bailey & Associates, Inc.*, Ill. Dept. Employment Sec. Nos. 87—H—92, H—13565 (September 19, 1990); *Director of Employment Security v. Bailey & Associates, Inc.*, Ill. Dept. Employment Sec. No. H—19603 (October 5, 1992); *Director of Employment Security v. Bailey & Associates, Inc.*, Ill. Dept. Employment Sec. No. H—24421 (July 9, 1993). Bailey filed a complaint in the circuit court seeking review of each decision. After consolidation, the circuit court affirmed in part and reversed in part. Defendants appeal the portion of the circuit court's order reversing the Director's decisions. Bailey cross-appeals

from the portion of the circuit court's order affirming the Director's decisions. We affirm in part and reverse in part.

## I. BACKGROUND

The facts are not in dispute. Bailey owns and operates two membership resort campgrounds. A membership entitles a member to use campground facilities and services. Bailey does not sell the memberships, relying instead on a sales force.

Salespeople are compensated on a commission basis. Bailey never withheld income or social security taxes from their commissions and always reported their commissions on forms applicable to independent contractors. Once all the memberships are sold, Bailey earns revenue from maintenance fees, membership dues, concessions, rentals, and assessments.

Bailey's salespeople worked at their own pace, set their own hours, and did not have a dress code. They were free to conduct their business anywhere. There were no sales meetings. Working for another employer was allowed. The salespeople were restricted from working for Bailey's competitors. Salespeople were free to employ any methods of sales, and sell at any location, as long as they used sales contracts provided by Bailey, did not misrepresent the terms of membership, and made sales at prices within approved ranges.

They were required to pay for sales leads received from Bailey and bore expenses for promotional materials, entertainment, offices, telephones, supplies, automobiles, lead generation, additional workers, and all other costs.

Salespeople bore full responsibility for every membership they sold until three timely payments had been made on the contract. They were required to establish and maintain reserve accounts out of their commissions with Bailey, which were charged if a customer failed to pay. They were also required to attend an initial three-day product information seminar.

Under the terms of the contract between Bailey and its sales force, salespeople agreed to expend at least 20% of their net commissions for the purpose of promoting the marketing and sale of memberships, including the costs of promotional materials, sales leads, and travel or entertainment expenses. They had to submit a statement of expenditure to Bailey biannually. They had to use sales contracts prepared and supplied by Bailey. During the three-day rescission period, Bailey's employees called new members to make sure no misrepresentations were made by the salespeople.

The Department issued separate notices of determination and assessment and demand for payment to Bailey for unpaid unemploy-

ment contributions and interest for 1984 through 1988, for 1989, and for 1991. These notices were based on an audit finding Bailey liable for contributions because the Department determined Bailey's sales force consisted of employees, rather than independent contractors. Bailey filed timely protests and petitions for administrative hearings for all the notices, except for the fourth quarter of 1988.

After administrative hearings, the Director's representative in each case found the services performed by the salespeople for Bailey were not exempt under section 212 of the Act (Ill. Rev. Stat. 1991, ch. 48, par. 322), which defines independent contractors. The representatives found the salespeople were employees of Bailey.

The representative in each case also found the salespeople were not exempt from coverage under the Act by virtue of section 3(5) of the Illinois Membership Campground Act (Membership Act) (Ill. Rev. Stat. 1987, ch. 29, par. 903(5)), which purported to define campground membership sales force as independent contractors, and is one of the subjects of this appeal. In each case, the Director adopted the recommended decisions of her representatives.

In October 1990, November 1992, and August 1993, Bailey filed complaints for administrative review of the Director's decisions in the circuit court. Case No. 90—MR—328 involves the assessment for 1984 through 1988; No. 92—MR—314 is the assessment for 1989; and No. 93—MR—219 is for 1991. These cases were consolidated in July 1993. In July 1994 the circuit court held as follows: (1) salespeople were legally and factually independent contractors, both by virtue of section 3(5) of the Membership Act and on the facts; (2) section 3(5) of the Membership Act was prospective and applied to this case only from September 24, 1987, the time when the Membership Act became effective; and (3) Bailey failed to timely file a protest in response to the notice of determination for the fourth quarter of 1988. The Department appeals, and Bailey cross-appeals.

In related administrative proceedings, three former Bailey employees applied for unemployment compensation. In one of these cases, a former salesman was found to be an employee and awarded unemployment benefits; Bailey did not seek review of this decision, and it became final.

## II. ANALYSIS

### A. Standard of Review

■ The findings and conclusions of administrative agencies on questions of fact are considered *prima facie* true and correct and therefore a reviewing court may reverse them only if those findings are against the manifest weight of the evidence. A decision is against

the manifest weight of the evidence only when an opposite conclusion is clearly apparent. Ill. Rev. Stat. 1991, ch. 110, par. 3—110; *Jack Bradley, Inc. v. Department of Employment Security*, 146 Ill. 2d 61, 73, 585 N.E.2d 123, 128 (1991); *Blair v. Department of Employment Security*, 168 Ill. App. 3d 537, 539, 522 N.E.2d 834, 836 (1988). However, on questions of law, agencies are not entitled to such deference, and an erroneous interpretation of a statute will be reversed. *Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security*, 131 Ill. 2d 23, 34, 544 N.E.2d 772, 777 (1989). Even when the issue specifically includes an interpretation of a statute, though, agencies receive *some* deference, for reasons of their expertise and experience, especially if the statute in question is their enabling statute. The interpretation will be overturned only if it is clearly erroneous. *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361, 522 N.E.2d 1219, 1222 (1988). Where, as here, the facts are not in dispute, their legal effect is a matter of law. *Fitzpatrick v. Human Rights Comm'n*, 267 Ill. App. 3d 386, 392, 642 N.E.2d 486, 491 (1994).

## B. Membership Act

■ The Department appeals the circuit court's holding section 3(5) of the Membership Act unambiguously provides Bailey's salespersons are independent contractors. The circuit court did not err. The primary rule of statutory construction is to give effect to legislative intent. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.*, 158 Ill. 2d 76, 81, 630 N.E.2d 820, 822 (1994). The primary source of the statute's meaning is its language. *Solich*, 158 Ill. 2d at 81, 630 N.E.2d at 822. We review issues of statutory construction *de novo*. See *City of Maroa v. Illinois Central R.R.*, 229 Ill. App. 3d 503, 505, 592 N.E.2d 660, 662 (1992).

■ The statute in question, the Membership Act, as amended effective September 24, 1987 (Pub. Act 85—812, § 1, eff. September 24, 1987 (1987 Ill. Laws 3413)), conclusively resolved the issue. It provided:

" 'Salesperson' means any person, other than a Membership Camping Operator, who is engaged in obtaining commitments of persons to enter into Membership Camping Contracts by making direct sales presentations to such persons. *For purposes of 'The Unemployment Insurance Act'*, approved June 30, 1937, as amended, *a salesperson under this Act is an independent contractor* and not considered to be engaged in employment unless such salesperson has tax withheld by a Membership Camping Operator pursuant to Section 701 of the Illinois Income Tax Act." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 29, par. 903(5).

The Department argues the phrase "unless such salesperson has tax withheld" should be interpreted as "unless such salesperson *should* have tax legally withheld."

●4, 5 The Department's position is as follows: if there is a conflict between two statutes, courts must interpret the statutes in a manner so as to avoid inconsistency and give effect to both statutes. See *Stone v. Department of Employment Security Board of Review*, 151 Ill. 2d 257, 262, 602 N.E.2d 808, 810 (1992). The purpose of the Act is to relieve the "[e]conomic insecurity due to involuntary unemployment." Ill. Rev. Stat. 1991, ch. 48, par. 300. If section 3(5) of the Membership Act is construed to mean what it says on its face, the Department argues, an operator of a campground could defeat the purpose of the Act by refusing to withhold taxes, even if this refusal violated the Illinois Income Tax Act (Tax Act) (Ill. Rev. Stat. 1991, ch. 120, par. 1—101 *et seq.*). Section 701 of the Tax Act (Ill. Rev. Stat. 1991, ch. 120, par. 7—701) requires an employer conducting business in Illinois to withhold taxes on compensation if to do so is required under section 3401 of the United States Internal Revenue Code (Code) (26 U.S.C. § 3401 (1988)). Section 3401 of the Code requires an employer to withhold income taxes from compensation paid to an "employee." 26 U.S.C. § 3401 (1988). In determining whether an individual is an employee under the federal law, the most important consideration is the employer's right of control. See 26 C.F.R. § 31.3401(c)—1(b) (1995). Therefore, argues the Department, the determination of whether Bailey should have withheld taxes hinges on the determination of whether his salespeople were "employees" under federal law. Since the Department determined Bailey's salespeople were "employees" under both federal and Illinois law, under the Department's interpretation Bailey should have withheld their taxes; therefore, section 3(5) of the Membership Act affords Bailey no relief.

■ We find this reasoning unpersuasive. We conclude section 3(5) of the Membership Act unambiguously provides for an independent contractor treatment of Bailey's sales force. We note the circuit court held the salespeople were legally and factually independent contractors because of both section 3(5) and the facts presented.

The Department's argument is not logically sound for a number of reasons. First, by declaring campground salespeople *should* have their taxes withheld, the Department in effect renders the entirety of section 3(5) of the Membership Act a nullity. No campground salesperson, under the Department's interpretation, can *ever* be an independent contractor. This is an absurd result, and we must presume the legislature did not intend absurdity. *Loyola Academy v.*

*S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1216 (1992); *People v. Liberman*, 228 Ill. App. 3d 639, 647, 592 N.E.2d 575, 581 (1992).

Second, different campground operators may have different legitimate reasons for treating their sales force either as employees or as independent contractors. Section 3(5) of the Membership Act allows them to engage their sales force as employees or as independent contractors. In some instances, a campground operator may treat a salesperson as an employee and the surrounding circumstances will demonstrate the salesperson *is an employee*. The campground operator would then have to withhold income tax and make unemployment contributions.

Finally, we disagree with the Director, who asserted the legislature did not express its intent clearly enough:

> "Section 3(5) of the Membership Campground Act is poorly drafted. A much clearer expression of legislative intent is necessary to conclude that the General Assembly intended to exempt campground membership salespersons from the broad remedial purposes of the Unemployment Insurance Act." *Director of Employment Security v. Bailey & Associates, Inc.*, Ill. Dept. Employment Sec. No. H—24421 (July 9, 1993).

How else can the legislature express its intent to exempt "campground membership salespersons from the broad remedial purposes of the Unemployment Insurance Act" (*Director of Employment Security v. Bailey & Associates, Inc.*, Ill. Dept. Employment Sec. No. H—24421 (July 9, 1993)), except to say "[f]or purposes of 'The Unemployment Insurance Act' *** a salesperson under [the Membership Act] is an independent contractor" (Ill. Rev. Stat. 1987, ch. 29, par. 903(5))? The Department's interpretation of section 3(5) of the Membership Act is insupportable. See *Carson Pirie Scott*, 131 Ill. 2d at 34, 544 N.E.2d at 777; *City of Decatur*, 122 Ill. 2d at 361, 522 N.E.2d at 1222 (clearly erroneous interpretations of statutes must be reversed). The circuit court was correct in reversing the Department's decisions and is affirmed.

## C. Collateral Estoppel

The Department, nevertheless, argues section 2202 of the Act (Ill. Rev. Stat. 1989, ch. 48, par. 682) precludes Bailey from relitigating the status of his sales force.

At one previous proceeding the Department found one Bailey salesman an employee. Bailey failed to seek a review of this decision. Consequently, argues the Department, Bailey is estopped from relitigating the issue of the status of his sales force.

At issue here is section 2202 of the Act, which prevents an

"employing unit" such as Bailey from relitigating certain issues already decided by the Department. Ill. Rev. Stat. 1991, ch. 48, par. 682. Section 2202 of the Act affords preclusive effect where (1) the findings are made in a prior proceeding before a claims adjudicator, referee, or the board of review; and (2) the proceeding resulted in a decision to allow unemployment benefits to a claimant. If these threshold requirements are met, a finding that an employing unit is an "employer" would have a preclusive effect.

Such a final finding is preclusive not only with respect to a claimant, but also with respect to other individuals:

> "If, after the hearing ***, the Director shall find that services were rendered for such employing unit by other individuals under circumstances substantially the same as those under which the claimant's services were performed, the finality of the findings made *** as to the status of the services performed by the claimant, shall extend to all such services rendered for such employing unit ***." Ill. Rev. Stat. 1989, ch. 48, par. 682.

The Department, in its decision as to the 1989 assessment, referred to three different cases in which a Director's representative ruled former Bailey workers were employees, not independent contractors. Only one of these decisions (Department case No. L—18—030, mailed September 19, 1990), however, involved a salesman (Larry Thompson) in circumstances similar to the instant case. Bailey did not appeal this decision, and it became final. Bailey concedes it falls within the scope of section 2202 of the Act. We hold, however, Bailey's failure to appeal does not estop it from challenging the status of its sales force in the instant case.

■ Section 2202 of the Act essentially codifies the common law doctrine of collateral estoppel in the unemployment compensation context. Our court defined collateral estoppel as a doctrine barring relitigation of identical issues in a subsequent action where (1) the issues in two cases are identical; (2) a final judgment on the merits has been rendered; and (3) the party against whom estoppel is asserted is the same party (or a party in privity) and has had a full and fair opportunity to litigate the issue. *Betts v. Manville Personal Injury Settlement Trust*, 225 Ill. App. 3d 882, 895, 588 N.E.2d 1193, 1201-02 (1992).

■ Bailey argues its stake in the Thompson matter was not large enough to provide an incentive to fully litigate the issue. We agree. Our supreme court recently cautioned against the unrestrained application of collateral estoppel when considerations of fairness are present. It stated we have " 'broad discretion' " to ensure the application of collateral estoppel is not fundamentally unfair, even though

the threshold requirements for it are otherwise satisfied. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 296, 657 N.E.2d 926, 930 (1995), quoting *In re Owens*, 125 Ill. 2d 390, 399-400, 532 N.E.2d 248, 252 (1988). As an example of unfairness, our supreme court referred to a situation where "[a] defendant may not have an incentive to fully litigate the prior suit if the damages in that case are small." See *Herzog*, 167 Ill. 2d at 296, 657 N.E.2d at 930. We find it would be fundamentally unfair to estop Bailey from challenging the Director's determination, especially in view of clearly expressed legislative intent.

■ Additionally, applying section 2202 of the Act to preclude Bailey from claiming the independent contractor status to its sales force would lead to a result contrary to the express intent of the legislature as evidenced in section 3(5) of the Membership Act. Courts must harmonize conflicting statutes, if possible. *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 52, 563 N.E.2d 465, 478 (1990) (even when apparent conflict exists, courts must construe statutes in harmony with each other). Assuming *arguendo* section 2202 of the Act estops Bailey, section 3(5) of the Membership Act, as most recent, or more specific, prevails over section 2202 of the Act. See *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 282, 644 N.E.2d 1159, 1162 (1994) (when choosing between two statutes in direct conflict, the more recent enactment generally will prevail as the later expression of legislative intent); *Brown v. Mason*, 132 Ill. App. 3d 439, 441, 477 N.E.2d 61, 63 (1985) (in cases of conflict, specific statutory provisions prevail over general ones).

We note one of the central policies underlying collateral estoppel is one of judicial economy. *Osborne v. Kelly*, 207 Ill. App. 3d 488, 491, 565 N.E.2d 1340, 1342 (1991). Because the decision in question became final *after* the first of these proceedings (No. 90—MR—328) commenced, requiring Bailey to proceed with its appeal would have led to duplicative proceedings to determine essentially the same issue. Hypothetically, under the agency interpretation of section 2202 of the Act, if 100 former sales staff of Bailey applied for unemployment, Bailey would have had to maintain 100 separate appeals, notwithstanding that a single issue was at the core of all the proceedings. Moreover, it is conceivable the costs of maintaining the proceedings would have exceeded Bailey's financial stake in individual cases.

For the foregoing reasons, we hold the circuit court did not err in holding section 2202 of the Act does not collaterally estop Bailey from maintaining the present action.

### D. Prospective or Retroactive Application

The circuit court held section 3(5) of the Membership Act had

only prospective effect. It therefore held section 3(5) of the Membership Act applied only to services performed by Bailey's salespeople after September 24, 1987, the date it became effective. Bailey argues section 3(5) of the Membership Act should apply retroactively. We agree.

■ As previously noted, the question of whether a statute operates retroactively or prospectively is one of legislative intent. *Champaign County Nursing Home v. Petry Roofing, Inc.*, 117 Ill. App. 3d 76, 78, 452 N.E.2d 847, 849 (1983). Generally, statutes are presumed to have a prospective effect. *Rivard v. Chicago Fire Fighters Union, Local No. 2*, 122 Ill. 2d 303, 308-09, 522 N.E.2d 1195, 1198 (1988). However, this presumption of prospectivity does not apply to clarifications of existing law. *Continental Illinois National Bank & Trust Co. v. Lenckos*, 102 Ill. 2d 210, 220, 464 N.E.2d 1064, 1068 (1984).

■ The question then becomes whether section 3(5) of the Membership Act added new substantive rights or merely clarified the existing law. We find it was a mere clarification.

Generally, if the legislature passes an amendment contradicting a recent interpretation of a statute, it is "an indication that such interpretation was incorrect and that the amendment was enacted to clarify the legislature's original intent." *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 111, 610 N.E.2d 1250, 1253 (1993). Our supreme court made this observation in the context of a judicial interpretation, but the same reasoning applies to the decisions of agencies. The Department has consistently held campground membership sales personnel are not "independent contractors" (the Department's determination to find them "employees" is exemplified by its refusal to accept the mandate of section 3(5) of the Membership Act). It follows the enactment of section 3(5) of the Membership Act was meant to correct the Department's interpretation and was therefore a clarification.

Further, the scant legislative history of section 3(5) of the Membership Act supports the supposition section 3(5) was not meant to fashion substantive changes. Thus, the sponsor of the legislation indicated it was merely a definitional provision. 85th Ill. Gen. Assem., House Proceedings, June 29, 1987, at 82 (statements of Representative Cullerton) ("[Section 3(5) of the Membership Act] defines sales person for purposes of [the] Unemployment Compensation Act"). Nowhere in the debates of either house is there any indication section 3(5) of the Membership Act was viewed as modifying or having any effect on substantive rights.

The Department argues section 3(5) of the Membership Act added a provision "where none previously existed." However, new provi-

sions have often been found to clarify existing laws. See, *e.g., Lenc-kos*, 102 Ill. 2d at 219-20, 464 N.E.2d at 1068 (amendment to Tax Act "intended to clarify, rather than change, the existing law"); *Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.*, 240 Ill. App. 3d 360, 363, 366-68, 608 N.E.2d 178, 180, 182-83 (1992) (amendment adding new section to Consumer Fraud and Deceptive Business Practices Act clarified existing law); *Rubin v. Marshall Field & Co.*, 232 Ill. App. 3d 522, 531-32, 597 N.E.2d 688, 694 (1992) (amendment adding new section to Consumer Fraud and Deceptive Business Practices Act clarified existing law).

Next, the Department argues section 3(5) of the Membership Act contains no language indicating its retroactivity. The Department's argument is misplaced. A statutory provision does not have to contain such language to be retroactive. Otherwise, there would be no need to have a rule of construction indicating the presumption of prospectivity does not apply to clarifications of existing law. *Lenckos*, 102 Ill. 2d at 220, 464 N.E.2d at 1068. If the Department's position is adopted, the rule of construction would be superfluous. This position finds support in the case law as well. See *Braun v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 108 Ill. 2d 119, 126, 483 N.E.2d 8, 11 (1985) ("[a]lthough the amendment did not itself say that it was intended to clarify rather than modify, the changes made were by way of clarification").

Finally, our supreme court has indicated the "substance versus procedure" distinction is not helpful in the retroactivity analysis. Instead, the court chose the "vested right" test, under which a change is not really "retroactive" unless it affects a vested right. If the change does not affect a vested right, then "the better approach is to apply the law that applies by its terms at the time of the appeal." *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 289, 664 N.E.2d 36, 39 (1996). Obviously, the Department does not have a "vested right" to treat campground salespeople either as employees or as independent contractors. Instead, the Department is to apply the law as passed by the legislature, which has spoken with sufficient clarity on this issue.

In sum, it is clear the legislature passed section 3(5) of the Membership Act because of the Department's insistence on treating membership campground sales forces as employees. The section was meant to be a clarification of existing law, rather than a substantive provision. It also did not affect a vested right. As such, it should have been given a retroactive application by the circuit court in its review of the agency action.

## E. Determination for the Fourth Quarter of 1988

■ Bailey also appeals the circuit court's order insofar as it held it is precluded from challenging the Department's determination for the fourth quarter of 1988. The circuit court did not err. At a hearing, the following dialogue took place:

"THE COURT: All right. First of all, as to if one protest was not timely made—and I don't know this—the Director went ahead and there was no motion to strike or the like and went ahead and heard it, and I don't think the Director on appeal here now can raise—

ATTORNEY FOR THE DEPARTMENT: Your Honor, if I can just interject. If you read the Director's decisions which I'm sure you will, you will see in the Director's decision it does state that was not protested in a timely fashion. It wasn't a matter of she took it up. It was a matter of Bailey and Associates did mention it, and the Director did address it in her decision that it was not timely.

THE COURT: Is that right?

[Plaintiff's attorney]: She said simply that it was not timely but does not strike the objections, Your Honor, or hold that they are invalid.

THE COURT: Well, if she said it wasn't timely filed, I'll go with her on that."

Bailey argues it should not be precluded from challenging the Department's determination with respect to the fourth quarter of 1988 because, it alleges, its protest was considered "on the merits" by the Director. Consequently, Bailey argues the Director's argument has been waived. This contention is without merit.

The Director's representative in his decision noted: "[t]he petitioner [Bailey] timely filed its protests and petitions for hearing to all of the above determination [sic] and assessments except the one dated July 21, 1989, which was for the fourth quarter of 1988." The Director, in affirming her representative, repeated: "[t]he petitioner [Bailey] timely filed its protest and petitions for hearing to all of the assessments except the assessment dated July 21, 1989, which was for the fourth quarter of 1988." Otherwise, the record is devoid of any discussion of the late protest and the consequences of its late filing.

It stands to reason, though, the Director's finding indicated she did not consider the untimely petition. If she did consider it, as Bailey argues, then the references to the late filing would have been superfluous. Contrary to Bailey's assertion, the evidence received at the relevant hearing did not include evidence specifically relating to the fourth quarter of 1988. The circuit court thus did not err in holding for the Department on this issue.

## F. Factual Status of Bailey's Sales Force

■ The Department cross-appeals the circuit court's order holding Bailey's salespeople were both factually and legally independent contractors. Because the court correctly applied section 3(5) of the Membership Act to the facts, concluding Bailey's salespeople are legally independent contractors, we need not reach the other issue.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's decision on the following points: (1) campground membership salespersons are "independent contractors" by virtue of section 3(5) of the Membership Act; (2) section 2202 of the Act does not estop Bailey from challenging the status of his sales force; and (3) Bailey failed to timely protest the agency's determination for the fourth quarter of 1988. We reverse the circuit court on the issue of prospective application of section 3(5) of the Membership Act and hold it applies retroactively.

Affirmed in part; reversed in part.

GREEN, J., concurs.

JUSTICE COOK, dissenting:

I respectfully dissent.

I disagree with the majority's holding that the question of whether Bailey's salespeople are independent contractors (and therefore Bailey need not pay contributions for purposes of unemployment insurance) depends on Bailey's *choice* not to withhold Illinois income taxes from those individuals. If the members of the sales force are employees, then Bailey is required to withhold income tax and to make unemployment contributions. Bailey has no choice in the matter, except to the extent that Bailey is able to restructure its overall relationship with its salespeople so that they are not employees.

An employer is required to make unemployment insurance contributions "with respect to wages payable for employment." 820 ILCS 405/1400 (West 1994). An employer is also required to withhold income taxes from compensation paid to an "employee." Section 3(5) of the Membership Act provides that the same test that applies to income tax withholding applies to unemployment insurance contributions. Section 3(5) eliminates the possibility that someone in Bailey's position will be treated differently for income tax purposes than for unemployment insurance purposes, and eliminates the necessity for Bailey to litigate the issue with both the Director of the Department

and the Director of the Department of Revenue (Revenue). Under section 3(5), determination of status as a nonemployee for income tax purposes is binding for unemployment insurance purposes.

The fact that Bailey has chosen not to withhold for income tax purposes does not end the matter. The Director of Revenue may nevertheless determine that Bailey's salespeople are employees and that Bailey is required to withhold. Until that is done, however, the Director of the Department must accept the fact that none of the members of the sales force "has tax withheld by a Membership Camping Operator pursuant to Section 701 of the Illinois Income Tax Act." Ill. Rev. Stat. 1987, ch. 29, par. 903(5). Accordingly, unless we accept the Director's argument under section 2202 of the Act, each of the salespersons in this case "is an independent contractor and not considered to be engaged in employment." Ill. Rev. Stat. 1987, ch. 29, par. 903(5).

It is intolerable for one in Bailey's position to allow members of its sales force to collect unemployment compensation but then assert that those individuals are not employees when the Director brings an enforcement action for unpaid unemployment insurance contributions. If Bailey shares (indirectly) the benefits of unemployment insurance, it must share the burdens of unemployment insurance. Section 2202 accordingly requires Bailey to litigate the issue of status as an employee at its first opportunity to do so. The decision involving salesman Larry Thompson became final before the circuit court's decision in this case and as such became binding upon the circuit court.

I do not see that any undue burden is placed on Bailey "if 100 former sales staff of Bailey applied for unemployment" as the majority suggests. 289 Ill. App. 3d at 320. It is true there is no mutuality of estoppel between Bailey and its sales force. If Bailey won the first case, other members of the sales staff could still file their own claims alleging that they were employees. Once employee status is found to exist, however, that controls all the remaining cases, so long as the services in the remaining cases were rendered "under circumstances substantially the same" as those in the first case. 820 ILCS 405/2202 (West 1994). Of course, once Bailey begins paying contributions for the salespeople it becomes very difficult to argue the salespeople are not employees when they file claims. Even if Bailey is being subjected to "offensive collateral estoppel," the legislature has determined, in section 2202, that that is appropriate.

Finally, I disagree with the majority's holding that section 3(5) should be applied retroactively. It does appear that the supreme court has adopted a new test for determining whether legislation should be retroactive or prospective. "[T]he better approach is to ap-

ply the law that applies by its terms at the time of the appeal, unless doing so would interfere with a vested right." *First of America Trust Co.*, 171 Ill. 2d at 289, 664 N.E.2d at 39. A retroactive change in the law is one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past. *First of America Trust Co.*, 171 Ill. 2d at 290, 664 N.E.2d at 40. As the majority points out, the Department has consistently held campground membership sales personnel were not "independent contractors." 289 Ill. App. 3d at 321. The legislature was not overturning a random incorrect interpretation when it enacted section 3(5), it was imposing a new duty or obligation on the Department in respect of transactions or considerations already past. Section 3(5) should be applied prospectively.