COMMUNITY AND ECONOMIC DEVELOPMENT ASSOCIATION OF COOK COUNTY, ILLINOIS, INC., Plaintiff-Appellant, v. BOARD OF REVIEW, State of Illinois Department of Employment Security, *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—96—2790

Opinion filed July 7, 1998.

TULLY, J., dissenting.

Joel F. Handler, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Laura M. Wunder, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Community and Economic Development Association of Cook County, Inc. (CEDA), appeals from a circuit court order affirming a decision of the Board of Review of the State of Illinois Department of Employment Security (board of review). The board of review found that Annie Wells and Mary Henderson, employees in CEDA's Head Start program, were eligible to receive unemployment compensation benefits during the summer months when they do not receive compensation from CEDA, since the Head Start program does not qualify as an educational institution. We affirm.

■ Prior to the summer of 1986, Wells and Henderson worked at the Head Start program throughout the entire year, without summer breaks. Due to a cut in federal funding, the program was changed to run from September through May. In the summer of 1987, Wells and Henderson filed claims for unemployment insurance for the summer months for which they were not working and not being paid by CEDA. The claims adjusters denied both Wells' and Henderson's claims for benefits based on section 612(B)(2) of the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/612(B)(2) (West 1996)), which provides:

> "2. An individual shall be ineligible for benefits on the basis of wages for service in employment in any capacity *** performed for an educational institution, *** during a period between two successive academic years or terms, if the individual performed such service in the first of such academic years or terms and there is a reasonable assurance that the individual will perform such service in the second of such academic years or terms." 820 ILCS 405/ 612(B)(2) (West 1996).

The claims adjusters determined that CEDA's Head Start program was an educational institution within the meaning of section 612(B)(2) and that Wells and Henderson were expected to return to work in the fall.

Both Wells and Henderson appealed to the appeals division of the Department of Employment Security. The referees in both cases determined that Wells and Henderson were not disqualified from receiving unemployment compensation benefits because CEDA was a social agency and not an educational institution. CEDA appealed the referees' decisions to the board of review and the board of review affirmed the referees' decisions.

CEDA filed suit seeking judicial review and reversal of the board of review's decisions. The circuit court ordered the cases remanded to the board of review for the development of a more detailed factual record. The circuit court ordered the board of review to render decisions on Wells' and Henderson's claims after conducting a consolidated hearing where evidence was presented concerning: (1) the daily program at CEDA's Head Start; (2) the program's licensing; (3) a reference to Head Start as an educational institution in Wells' application for benefits; (4) what Wells taught; (5) what Henderson supervised; (6) what the children learned; (7) the significance of a certificate in child development; and (8) CEDA's explanation of an earlier board of review decision addressing the definition of educational institution.

A hearing was held and the referee set aside the claims adjuster's decisions on the ground that CEDA's Head Start program was a social

agency and was not an educational institution within the meaning of section 612(B)(2) of the Act because it was not under the supervision or control of any board of education or school authority. CEDA appealed this decision to the board of review and the board of review affirmed the referee's decision that Wells and Henderson are entitled to apply for unemployment benefits since CEDA's Head Start program was not an educational institution.

Wells then filed another claim for unemployment benefits and the claims adjuster determined that section 612(B)(2) of the Act did not disqualify Wells from receiving benefits. CEDA appealed and the referee affirmed the decision, and after an appeal to the board of review, the board of review also affirmed. CEDA then filed a complaint seeking judicial review of the board of review's decisions. The circuit court affirmed the board of review's decisions, finding that CEDA's Head Start Program was not an educational institution within the meaning of section 612(B)(2) of the Act. CEDA appeals.

■ The findings and conclusions of the board on questions of fact are considered *prima facie* true and correct, and, therefore, a reviewing court's determination is limited to whether those findings are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 606 N.E.2d 1111 (1992); *Jack Bradley, Inc. v. Department of Employment Security*, 146 Ill. 2d 61, 585 N.E.2d 123 (1991). An administrative decision is not against the manifest weight of the evidence unless the opposite conclusion is clearly apparent. *Abrahamson*, 153 Ill. 2d at 88. The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently does not justify reversal of the administrative findings. *Abrahamson*, 153 Ill. 2d at 88. If the record contains evidence supporting the agency's decision, it must be affirmed. *Abrahamson*, 153 Ill. 2d at 88.

■ Moreover, when courts review an agency's interpretation of a statute that the agency is empowered to administer, courts accord the agency's interpretation deference. *Abrahamson*, 153 Ill. 2d at 91. An agency's interpretation of a statute will be overturned only if it is clearly erroneous. *Bailey & Associates, Inc. v. Department of Employment Security*, 289 Ill. App. 3d 310, 316, 683 N.E.2d 1204 (1997).

■ The purpose of the Illinois Unemployment Insurance Act is to provide compensation benefits to an unemployed individual in order to relieve economic distress caused by involuntary unemployment. *Kelley v. Department of Labor*, 160 Ill. App. 3d 958, 513 N.E.2d 988 (1987). The Act is to be liberally construed in favor of providing benefits. *Jack Bradley*, 146 Ill. 2d at 75.

■ The Act does not define educational institution and the issue of

what constitutes an educational institution under section 612(B)(2) has not been addressed in Illinois. The term "educational institution" is, however, defined in Illinois Department of Employment Security administrative regulations. The benefit rules provide:

> " 'Educational Institution' under section 211.1 or 211.2 of the Act (Ill. Rev. Stat. 1983, ch. 48, pars. 321.1 and 321.2) has for its primary function the presentation of formal instruction and normally maintains a regular facility and curriculum and normally has a regularly enrolled body of pupils or students in attendance at the place where its educational activities are regularly carried on." 56 Ill. Adm. Code § 2915.1 (1996).

Moreover, *Ray Schools-Chicago-Inc. v. Cummins*, 12 Ill. 2d 376, 146 N.E.2d 42 (1957), provides us with some guidance in determining what constitutes an educational institution. In *Ray*, a nonprofit corporation claimed that it was not required to pay employer contributions by virtue of an exception in the Act for institutions operated exclusively for educational purposes. The court disagreed, noting that there is a need to strictly limit provisions allowing employers to avoid paying benefit contributions and that exemption provisions are strictly construed against one claiming exemptions. The *Ray* court held that specialized schools that do not fit into the general scheme of education founded by the state and supported by public taxation do not qualify for exemption from benefit contributions, even if some of the curriculum overlaps with that offered in a traditional school. In order to qualify for the educational exception the court stated that "there must be a corresponding and substantial benefit to the public which justifies the granting of an exemption, and the course of instruction and methods must be such as to bring the institutions within the ordinary and accepted meaning of a school or educational institution." *Ray*, 12 Ill. 2d at 383. The court stated that the teaching of but a small part of the instruction given in ordinary schools does not qualify a program as an educational institution for which exemption was intended. *Ray*, 12 Ill. 2d at 384. See *Coyne Electrical School v. Paschen*, 12 Ill. 2d 387, 392, 146 N.E.2d 73 (1957) (constitutional provision exempting from tax property used exclusively for school purposes requires qualifying institution to provide "first, a course of study which fits into the general scheme of education founded by the State and supported by public taxation; and second, a course of study which substantially lessens what would otherwise be a governmental function and obligation").

Other jurisdictions have specifically addressed whether Head Start programs constitute educational institutions. In *Texas Employment Comm'n v. Child, Inc.*, 738 S.W.2d 56 (Tex. Ct. App. 1987), the court affirmed the employment commission's finding that a Head Start

program was not an educational institution, and thus its employees were eligible for unemployment benefits during summer recess. In finding that the commission's ruling that the Head Start program was not an educational institution was reasonable, the court noted the commission's findings that: (1) none of the individuals working with the children held teaching certificates; (2) none of the children were required by law to attend school; and (3) the educational aspect of the program was merely incidental to the primary purpose of bringing the children to a level of social development where they could better cope with the environment of a primary school. See also *Industrial Comm'n v. Board of County Commissioners*, 690 P.2d 839 (Colo. 1984) (agency regulation excluded Head Start programs from definition of educational institution because services that met the educational needs of disadvantaged children are incidental to services addressing children's physical, social, medical, emotional, and nutritional needs).

In contrast, the court in *Simpson v. Iowa Department of Job Service*, 327 N.W.2d 775 (Iowa 1982), affirmed the Department of Job Services' denial of Head Start employees' claims for unemployment benefits, finding that the Head Start program was an educational institution since there were aspects of the program that constitute academic training. The court found significant that although the program had not been approved, licensed or issued a permit to operate as a school, it was issued a preschool license by the Department of Social Services, and its program included the teaching of language, speaking and self-expression skills. Likewise, in *In re Huntley*, 41 N.C. App. 709, 255 S.E.2d 574 (1979), the court affirmed the Employment Security Commission's denial of a Head Start employee's claim for unemployment benefits on the basis that the program provided education in the broad sense of the word. The court noted that the particular characteristics of each Head Start program must be examined in order to determine if it qualifies as an educational institution.

█ In the instant case, the board of review noted that the Head Start program was operated by a private, not-for-profit community and economic development association, and was designed as a preschool program, primarily for economically disadvantaged children, ages three to five, to enhance the children's potential to succeed in school by providing development services to meet their intellectual, social and health needs. The Head Start program consisted of two half-day sessions, approximately three hours in duration.

CEDA's Head Start program is licensed by the Illinois Department of Children and Family Services as a child care institution under the state Child Care Act of 1969. 225 ILCS 10/1 *et seq.* (West 1996). Employees of a child care institution are required to possess a child

development associate credential issued by the National Association for the Education of Young Children, an organization contracted to provide this credential by the United States Department of Health and Human Services. Such employees are not required to undergo a four-year college education to obtain the credential nor are they required to possess a teachers' certificate from the State Board of Education for the program, as is required to teach in a public school. Moreover, the Head Start program was not regulated or administered by the State Board of Education in any manner.

During the class sessions, children learn through play and activities with other children, while being supervised by a child development worker. A written child development plan is prepared with respect to each child's progress in cognitive, motor/movement, social/emotional, and language development areas. Children are screened and their individual development and activities are tracked and documented in such areas as interaction with adults, self-image, peer interaction, self-help, language reception and expression, recognition and discrimination, symbolization and imitation, concept development, quantitative skills, gross motor skills and fine motor skills.

Sessions involve teaching good hygiene, song, discussion, motor activities, story telling and language activities. Children also participate in a free-choice period during which they may draw, use binoculars and magnets, play with puzzles and blocks, play dress-up and taste a variety of foods. Parent volunteers are considered critical members of the program team, and the child development worker visits the parents' home on a regular basis. The program also provides support services in the areas of health, family, development, resource, nutrition, and special needs to the child and family.

Based on these factors, the board of review determined that Wells' and Henderson's work for CEDA's Head Start program did not constitute services performed by an educational institution. The board of review emphasized that the primary purpose of CEDA's Head Start program was to bring the children to a level of social development where they could better cope with the environment of a primary school. The evidence did not establish that the primary function of the program was the presentation of formal instruction as required for the program to be an educational institution. The board of review found that the educational aspect of the program was incidental to the social development services provided in the program.

We find that the board of review's determination that CEDA's Head Start program does not qualify as an educational institution under section 612(B)(2) was not against the manifest weight of the evidence or clearly erroneous. While there is an educational component

to CEDA's Head Start program, this component is incidental to the main function of the program, which is to provide social development services. The Head Start program did not provide formal instruction. Rather, the children enrolled in the program primarily learn through play and interacting with other children and adults. Moreover, the children enrolled in the program are not of an age required to attend school. Thus, their presence in the Head Start program does not lessen the government's burden to educate the children.

Accordingly, for the reasons set forth above, we affirm the trial court's order finding that the board's determination that CEDA's Head Start program was a child care institution rather than an educational institution was not against the manifest weight of the evidence or contrary to law.

Affirmed.

RAKOWSKI, J., concurs.

JUSTICE TULLY, dissenting:
I must respectfully dissent. I cannot accept the majority's conclusion that the trial court's findings are not against the manifest weight of the evidence. After reviewing the evidence, I believe the trial court and the majority have reached an incorrect result in finding that the Head Start program was not an educational institution.

Black's Law Dictionary 514 (6th ed. 1990) states that education "[c]omprehends not merely the instruction received at school or college, but the whole course of training; moral, *** intellectual, and physical. Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and best sense it relates to them all." Further, it defines "educational purposes," in pertinent part, as "not limited to such school properties as would relieve some substantial educational burden from the state." Black's Law Dictionary 514 (6th ed. 1990). Even though, as the majority reasons, the Head Start program does not lessen the government's burden to educate children, I do not believe that fact should act as a limiting factor to its educational purposes. I believe that the Head Start program provides education in the broadest and best sense of the word. The program includes the teaching of moral, intellectual, social and health skills. Accordingly, this program is exactly what the legislature intended to fit within the meaning of educational institution when it drafted the Illinois Unemployment Insurance Act.

As the majority noted, the purpose of the Act is to provide compensation benefits to an unemployed individual in order to relieve

50

economic distress caused by involuntary unemployment. *Kelley v. Department of Labor*, 160 Ill..App. 3d 958, 513 N.E.2d 988 (1987). The spirit and intent of the Act are to provide unemployment benefits to individuals involuntarily unemployed until they can secure employment. Here, the teachers chose to remain in a field where the work ordinarily does not provide year-round employment. They should not be allowed to receive unemployment benefits when there is a reasonable assurance that the teacher will teach in successive academic years and nothing is prohibiting them from seeking another job during the summer months. This type of temporary unemployment is precisely what the legislature intended to except from unemployment and allowing schoolteachers to collect this benefit undercuts the very spirit of the Act.

In light of the foregoing, I would reverse the judgment of the circuit court of Cook County and remand for further proceedings consistent with this view.