PHILIP S. LINDNER & CO., INC., Plaintiff-Appellant, *v.* KATHRYN M.
EDWARDS *et al.*, Defendants-Appellees.

(No. 72-329; ▮▮▮▮▮▮▮▮▮

Third District—August 6, 1973.

Thomas W. Grant, of Sandwich, appellant.

James J. Duncan, of Peru, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the
court:

This is an appeal from a judgment of the Circuit Court of La Salle
County in favor of defendant Kathryn M. Edwards, entered pursuant to
motion made at the close of proof on behalf of plaintiff. Plaintiff Philip
S. Lindner & Co., Inc. initiated the action on the theory that it was a
"contractor" within the meaning of section 1 of Mechanics' Lien Act. The
plaintiff engages in the business of selling lumber and building supplies
at retail and initiated the action to foreclose what it claimed was a proper
mechanic's lien. Named as defendants in the action were Kathryn M.
Edwards, owner of the real estate against which the plaintiff sought to
assert the lien, and Kesling Associates, Inc., asserted to be a general

contractor which had contracted with the owner to erect a dwelling house upon the premises (and other parties whose interests are not involved in the action before us).

The pertinent portion of section 1 of the Mechanics' Lien Act involved provides:

> "Any person who shall by any contract or contracts, express or implied * * * with the owner of a tract of land, or with one whom the owner has authorized or knowingly permitted to contract to improve the lot or tract of land, furnish material * * * is known under this Act as a contractor, and has a lien upon the whole of such lot or tract of land * * * for the amount due to him for such material * * *." Ill. Rev. Stat. 1971, ch. 82, § 1.

It is apparent from the brief and arguments presented by plaintiff that it concedes that its materials contract was with the general contractor Kesling but it contends, nevertheless, that it is to be deemed a "contractor", with a contractor's lien within the meaning of section 1 for the asserted reason that the owner "authorized" and "knowingly" permitted the general contractor to enter into such contract with plaintiff. The trial court, at the time of entry of judgment in favor of the owner Kathryn Edwards, found, in substance, that plaintiff had failed to produce any evidence to justify a finding that the owner had authorized or knowingly permitted the contract for materials with Kesling; that plaintiff was in fact a subcontractor; and that it had no subcontractor's liens susceptible of foreclosure by reason of its failure to comply with section 24 of the Act. (Ill. Rev. Stat. 1971, ch. 82, § 24.) Only the finding of the trial court that plaintiff had failed to produce evidence to justify a finding that the owner had authorized or knowingly permitted the general contractor to enter into the contract with the plaintiff is placed in issue on appeal before us. Plaintiff contends that such finding of the trial court was contrary to the manifest weight of the evidence.

From the excerpts of record, the pleadings, and the report of proceedings, it is apparent that sometime prior to July 11, 1969, the owner Kathryn M. Edwards entered into a contract with Kesling Associates, a general contractor, to erect a residence on the premises owned by her. At that time, Kesling Associates was not incorporated and Mrs. Edwards was an employee in its business office. (It appears from the record that Kesling Associates did incorporate subsequently, but the exact date does not appear. Plaintiff's exhibit "A", the pre-incorporation subscription agreement, suggests that the incorporation did not occur until after November 10, 1969.) A carpenter foreman George Kleinprinz, who worked for Kesling, delivered to plaintiff a typewritten list of materials and supplies to be furnished for the construction of the residence, with

the list bearing the handwritten caption, "K. Edwards job". On July 11, 1969, plaintiff prepared and delivered to Kesling a written quotation of the cost of the items on the list, and on September 16, 1969, Kesling entered into an oral contract with plaintiff to purchase the necessary materials and supplies. Pursuant to such contract plaintiff made its first delivery of materials on September 16, 1969, and made its last delivery on July 27, 1970. A payment of $7,172.87 became due on July 27, 1970. On July 21, 1971, when $6,372.87 remained unpaid, plaintiff started this action against the owner to foreclose a contractor's lien as hereinbefore stated.

Prior to the hearing on the motion of the owner for judgment in the case, three witnesses testified for plaintiff, including the owner who was called as an adverse witness. Philip S. Lindner, who was president of plaintiff, testified that during the period from September 16, 1969, to July 27, 1970, materials were delivered to the construction site from time to time as ordered; that Mrs. Edwards was an employee in the Kesling office during all of that period; and that some of the orders for materials were telephoned to plaintiff by Mrs. Edwards and that she did not at any time protest the delivery of materials to the job site. He testified further that monthly statements for materials were sent to Kesling, and, with no identification as to time, he stated that he had inquired of Mrs. Edwards about the payment of the account and was informed by her that a loan was being obtained on the property and that a substantial payment would be made when the loan was consummated.

George Kleinprinz, the carpenter foreman for Kesling, testified that he had worked as a foreman and a supervisor for Kesling from about May 1969 until around September 1970, when he terminated his employment. He stated that Mrs. Edwards ran the Kesling office, paying bills and signing paychecks. He stated that when he desired materials to be ordered for a job he would leave a list in the office, and then on three or four occasions in the course of office routine, Mrs. Edwards had ordered materials for the residence being constructed on her premises. He also stated that Mrs. Edwards had visited the construction site frequently. Kleinprinz also stated that Kesling maintained a folder for ·each of its construction jobs, including the building being erected on Mrs. Edwards' lot, and that it was part of her duties to maintain such files. Although Kleinprinz could give no times or dates, the witness stated that Mrs. Edwards and Gary Kesling had previously erected a house on another site as a joint venture. Without reference to any dates also, Kleinprinz testified that "they" had approached him and informed him that they were going to form a corporation and that they asked him

to buy some stock and told him he would be a vice-president. On November 10, 1969, he signed the preincorporation agreement committing himself to the purchase of $10,000 in stock but eventually "put in" only $5,250. Following the incorporation, according to Kleinprinz, there were never any corporate meetings that he attended.

Mrs. Edwards, who was called as an adverse witness, testified that she was the owner of the premises involved; that she had purchased the lot with her own funds about 3 months before the construction was started; that the house was to be her residence; and that Kesling was employed to construct it. When she was asked if the house was to be used as a "demonstration house or model home of some kind", she responded, "No, that was Mr. Kesling's idea." The witness, who displayed an uncertainty as to dates throughout her testimony, testified that she started to work for Kesling in February or March of 1968 and that she had terminated the employment for Kesling at the end of July in 1969. She stated that work on the house had started while she was employed by Mr. Kesling and that she had not worked for the firm in any capacity after July 1969, and had not been employed there during the period of material delivery dates testified to by Lindner. Her duties when employed, she stated, were primarily in sales, working with established customers and seeing what would go in their houses. She stated that she might on occasion have talked to Lindner about materials. Mrs. Edwards conceded that she had become Secretary when the firm had incorporated and stated that, indirectly, she had been one of the organizers. However, she further testified that she had not furnished any capital when the firm began, but that at a later date, about which she was not certain, she had put $20,000 into the business on a temporary basis under an agreement, which was not kept, that she would be repaid in 60 days.

As one basis for its claim for a contractor's lien under Section 1 of the Act, plaintiff contends that the contract between Mrs. Edwards and Kesling Associates, *Inc.* (emphasis ours) was fraudulent, and that Mrs. Edwards, the owner, and Kesling Associates, *Inc.* (emphasis ours) are, in reality, one entity, and that a court of equity should pierce the corporate veil and find that there was in fact a direct contract for materials between the owner and the plaintiff. The trial court rejected this contention. On the basis of the proof presented by plaintiff we believe the trial court acted correctly in doing so.

■■ There is no showing in the record when the corporation came into existence. If the pre-organization subscription agreement is any guide, incorporation did not occur until after November 10, 1969. It appears affirmatively from the pleadings and proof that the owner entered into

an agreement with Kesling (not incorporated) to erect the building prior to July 11, 1969, and that Kesling entered into an oral contract with plaintiff for materials on September 16, 1969. On neither occasion were the owner and Kesling "one entity" as plaintiff's theory presupposes, nor, since Kesling Associates, Inc. had not yet come into being, had plaintiff been misled as to knowing with whom it was dealing.

The case of *Illinois Interior Finish Co. v. Peonie*, 277 Ill.App. 554, upon which plaintiff relies and from which its theory is apparently derived, is factually inapplicable. The proof in that case showed that the owner there was a mere nominee for a secret trust, and that the general contract, which was suspect of having been contrived after litigation had arisen, had been entered into with a corporation which was a party to the secret trust, which had no charter powers to engage in the construction business, and which was controlled by the husband and son of the purported owner.

Relying upon the part of Section 1 of the Act which grants a contractor's lien to any person who furnishes material pursuant to a contract, "with one whom the owner has authorized or knowingly permitted to contract," plaintiff next asserts that it made a prima facie case that the owner, Mrs. Edwards, knowingly permitted Kesling to contract for materials with plaintiff and that the trial court therefore erroneously entered judgment for the owner.

Plaintiff's claim of a prima facie case and the construction it seeks to place on Section 1 of the Act, ignores its pleading and proof that Mrs. Edwards, the owner, entered into a contract with Kesling (not incorporated), a general contractor, for the construction of a residence. As stated in Love, Illinois Mechanics' Liens (2d ed.), §131, p. 4-49: "It is not the theory of our statute that the original contractor is the agent of the owner for the purpose of purchasing materials." It has been consistently held that if the owner of real estate has let out the entire work to an original contractor, then he may not be deemed to have "knowingly permitted" or "authorized" any subcontractor of the original contractor to furnish any service or material, since the owner is justified in assuming that such subcontractor is doing the work and furnishing materials for the original contractor, and not the owner. See: Love, Illinois Mechanics' Liens (2d ed.), §33, pp. 2-11, 2-12; *Vanderlaan v. Berry Construction Co.*, 119 Ill.App.2d 142, 255 N.E.2d 615; *Sloan v. Cleveland, CC & St. Louis Ry. Co.*, 140 Ill.App. 31.

Nor when its facts are noted do we see *Wertz v. Mulloy*, 144 Ill.App. 329, as requiring a departure from such rule in this case as plaintiff contends. In *Wertz*, a Mrs. Mulloy, who owned a life estate in the premises, entered into a contract with one McHatton to remodel her residence

where she lived with her daughter, Alice, one of the remaindermen. Mrs. Mulloy died before the remodeling had been completed, but the work was continued and Wertz supplied the lumber therefor. McHatton paid Wertz a part of the money he had received from Mrs. Mulloy prior to her death and when the balance due him continued to be unpaid, Wertz filed a suit against the remaindermen for a subcontractor's lien for the amount due him. So far as is pertinent in this case, the court, relying on the language of section 1 of the Act which gives a lien to anyone whom the owner of the lot has "authorized or knowingly permitted to contract for * * * material," held that the conduct of Alice Mulloy entitled Wertz to a lien against the remainder interest. In substance, the conduct relied upon was found in proof that Alice had participated in the preparation of the written contract with McHatton; that she at times took practical charge of directing the work; that she caused many radical changes to be made from the plans and specifications; and that she was present a good deal of the time when the work was in progress. Although plaintiff arduously insists to the contrary, we find no proof that Mrs. Edwards indulged in comparable conduct in this case. It is true that Kleinprinz testified that she visited the site from time to time, and while she may have worked with the architect on the original design and colors, as Kleinprinz also testified, there was no proof that she caused radical changes or even attempted to take charge of directing the work. Her conduct was not significantly different from that of a typical owner who has a house built by a general contractor.

■■■ It is axiomatic that the statute providing for mechanic's liens is in derogation of the common law and is to be strictly construed as to the manner of invoking it. (*E.g. Vanderlaan v. Berry Construction Co.*, 119 Ill.App.2d 142, 255 N.E.2d 615.) In applying that principle to the cause before us, foreclosure of the mechanic's lien should not have been allowed. We conclude that the circuit court of LaSalle County accordingly properly refused to allow plaintiff a contractor's lien against the owner under section 1 of the Act, and its judgment is, therefore, affirmed.

Judgment affirmed.

STOUDER and SCOTT, JJ., concur.