GIL RIVAS *et al.*, Plaintiffs-Appellants, v. WESTFIELD HOMES OF ILLINOIS, INC., *et al.*, Defendants-Appellees (Edward Hamming, Indiv. and as an Employee of Saint Therese Medical Center, *et al.*, Defendants).

Second District   No. 2—97—0545

Opinion filed March 31, 1998.

Philip J. Nathanson, of Goldberg & Goldberg, of Chicago, for appellants.

Russell W. Hartigan and Francis P. Cuisinier, both of Russell W. Hartigan & Associates, of Chicago, and Marc F. Benjoya, of Cassiday, Schade & Gloor, of Waukegan, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

The plaintiffs, Gil Rivas and Jo Ann Rivas, filed a complaint against the defendant Westfield Homes of Illinois, Inc. (Westfield), alleging that Westfield breached a duty of reasonable care that proximately caused an injury to Mr. Rivas's ankle. The trial court determined as a matter of law that Westfield did not owe the plaintiffs a duty of care. Accordingly, it granted the defendant's motion for summary judgment, from which the plaintiffs now appeal. We affirm.

The record shows that the plaintiffs entered into a contract with Westfield for the construction of a new home in Gurnee, Illinois. Throughout the course of the construction, the plaintiffs visited the construction site to inspect the progress of the house. Some of these visits were arranged through a Westfield representative to discuss certain aspects of the construction, while, on some occasions, the plaintiffs visited the site on their own. The parties dispute whether the plaintiffs were permitted to visit their future home during construction without an appointment.

On Friday, September 3, 1993, the plaintiffs visited the site to meet Tom Lawler, the Westfield superintendent, for a "pre-drywall" inspection. Mr. Rivas testified in a deposition that he did not see any drywall on the premises on that date. Mr. Rivas stated that he spent an hour or two on the site and talked with Lawler about several

items, including the light fixtures in the dining room. Mr. Rivas said that Lawler answered all his questions satisfactorily. Whether Mr. Rivas would be visiting the site the following week, when the drywall was to be installed, was not discussed. Rivas testified, however, that he understood that the installation of the drywall would begin the following week.

On Saturday, September 4, the day after Mr. Rivas's visit with Lawler, Mr. Rivas visited the construction site with his wife. Mr. Rivas testified that he did not inform anyone at Westfield that he was making the visit. No one from Westfield was at the site. Mr. Rivas stated that he and his wife went to the house to make sure that there were not any "other issues" with the house before the drywall was installed.

Mr. Rivas said that, after looking at the house, he and his wife began cleaning up some of the construction debris. He also spoke with a neighbor. Mr. Rivas stated that, unlike on Friday, he noticed drywall on the site on Saturday. Mr. Rivas added that the drywall was "in virtually every room" and that it "was on its side stacked at an angle up against the walls."

Mr. Rivas testified that, after a couple of hours on the site, he and his wife entered the living room. Mr. Rivas stated that he and his wife started looking at the insulation around the window frames of the house. Near one window was a stack of drywall that leaned against the wall. The drywall was approximately half an inch thick and measured 4 feet wide and 12 feet in length. Each sheet weighed approximately 70 pounds, and approximately 19 sheets were stacked against the wall at a 30 degree angle.

Mr. Rivas testified that there was nothing about the way the drywall was positioned that suggested it created a hazard. Mr. Rivas acknowledged, however, that he did not know the approximate weight of a piece of drywall. Further, Mr. Rivas acknowledged that he knew it was important to be careful around the house while it was being constructed.

Mr. Rivas stated that he walked toward one of the windows to inspect it. The drywall covered the bottom of the window, as the window was only a foot off the floor, and the drywall was four feet tall. While looking at the frame, Mr. Rivas rested his hand on top of the stack of drywall, and he tried to peer over and behind the drywall to look at the window frame. Mr. Rivas acknowledged that he attempted to pull the drywall away from the window so that he could get a look at the frame. He stated that he did not remember whether he used one or two hands in pulling the drywall away from the window. As he was touching the drywall, however, the drywall started

to tip forward away from the wall. Mr. Rivas attempted to back out of the way, but the drywall fell on top of his ankles, pinning him to the floor.

Patricia Lowe, the neighbor who was in the house on the day of the accident, testified that she did not see either Mr. Rivas or Mrs. Rivas touch the drywall earlier in the day. Lowe stated that, as Mr. Rivas was near the window and started to look at it, Mrs. Rivas told him not to touch the drywall because it was heavy. Lowe said that she saw the stack of drywall fall on top of Mr. Rivas. As the stack was falling, Mr. Rivas put his hands up to try to catch it, but the stack fell on top of him. Lowe said that the stack fell on Mr. Rivas so that all his body below his shoulders was covered by the drywall.

Mrs. Rivas's testimony in her deposition supported Mr. Rivas's version of events. Contrary to Lowe's testimony, Mrs. Rivas stated that she never told Mr. Rivas that the drywall was heavy. Further, Mrs. Rivas stated that the drywall covered Mr. Rivas up to his knees, not to his shoulders.

Mrs. Rivas also expanded on the events leading up to the accident. Mrs. Rivas explained that she looked across the room at her husband and saw him putting his hand on the drywall. Mrs. Rivas stated that she shouted at Mr. Rivas as she saw him attempt to "pull away the drywall." Approximately three seconds later, however, the stack of drywall fell on top of him. Mrs. Rivas added that she shouted at her husband to stop because, although she did not know how heavy the drywall was, she thought it was a "possibly dangerous" situation.

Westfield filed a motion for summary judgment claiming that Mr. Rivas was the sole cause of his accident. Westfield asserted that it did not owe a duty to warn Mr. Rivas that the drywall was heavy or to tell him not to touch the drywall, because the drywall was an obvious danger. The trial court agreed with Westfield and granted its motion.

On appeal, the plaintiffs contend that Westfield owed them a duty of care because the stack of drywall was not an open and obvious danger. In the alternative, the plaintiffs assert that, even if the stack can be considered an open and obvious danger, the defendant owed them a duty under one of the law's exceptions.

■ Summary judgment is appropriate only when the pleadings, depositions, and admissions on file, together with affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Bolingbrook Equity I Ltd. Partnership v. Zayre of Illinois, Inc.*, 252 Ill. App. 3d 753, 764 (1993). While plaintiffs need not prove their cases at the summary judgment stage, they must come forward with some facts

that would arguably entitle them to judgment. *Jones v. Minster*, 261 Ill. App. 3d 1056, 1059 (1994). Indeed, summary judgment is a drastic measure and should be granted only if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Therefore, where a reasonable person can draw divergent inferences from undisputed facts, summary judgment should be denied. *Outboard*, 154 Ill. 2d at 102. Finally, our review of the trial court's entry of summary judgment is *de novo. Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701 (1996).

■ A complaint based upon negligence must allege facts sufficient to show the existence of a duty owed by the defendant to the plaintiff, the breach of that duty, and injury proximately resulting from the breach. *Burse v. CR Industries, Inc.*, 288 Ill. App. 3d 48, 52 (1997). Whether a duty exists is a question of law for the court and depends upon whether the parties stood in such a relationship that the law would impose an obligation upon the defendant to act reasonably for the plaintiff's protection. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990).

■ Our supreme court has adopted the rule set forth in sections 343 and 343A of the Restatement (Second) of Torts regarding the duty of landowners to their invitees. See *Ward*, 136 Ill. 2d at 145-46. Section 343 provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343, at 215-16 (1965).

*Ward*, 136 Ill. 2d at 145-46.

Westfield argues that the plaintiffs acknowledged the existence of drywall throughout the house and in front of the window. Therefore, it should not be held liable for Mr. Rivas's injuries. This argument leads us to section 343A(1) of the Restatement (Second) of Torts, which states:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1), at 218 (1965).

*Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 435-36 (1990).

According to the Restatement, "known" means not only knowledge of the existence of the condition or activity itself but also the appreciation of the danger it involves. *Fearheiley v. Summers*, 246 Ill. App. 3d 86, 90 (1993). "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable person in the position of the visitor, exercising ordinary perception, intelligence, and judgment. *Deibert*, 141 Ill. 2d at 435.

■ We find that, under these principles, the stack of drywall was an open and obvious danger that Westfield was not obligated to protect the plaintiffs against. Specifically, we find that there was no reason that Westfield should have expected that the plaintiffs would not have discovered or realized the danger of the stack of drywall. Indeed, a reasonable visitor to a construction site would appreciate the danger associated with an unfinished house. Further, the drywall panels were significant in size (4 feet by 12 feet) and were leaning against a wall. We believe that a person exercising ordinary perception, intelligence, and judgment would have known of the possibility of the stack tipping and falling if moved. Consequently, Westfield did not owe the plaintiffs a duty to protect them against the stack of drywall.

The plaintiffs contend that, even if the stack of drywall was an open and obvious danger, that fact does not serve as a *per se* bar to their negligence claim. We agree with this principle of law.

Historically, landowners owed no legal duty to take precautions or warn against risks that were open and obvious conditions on the land. See *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456 (1976). In *Ward*, however, our supreme court altered this rule by holding that the open and obvious doctrine no longer operated as a *per se* bar to a landowner's reasonable duty of care. *Ward*, 136 Ill. 2d at 145. Accordingly, there are now two exceptions to the open and obvious rule—the "distraction exception" and the "deliberate encounter exception."

The plaintiffs acknowledge that the deliberate encounter exception is inapplicable to the facts of this case. Accordingly, we address only whether the plaintiffs have met the requirements under the distraction exception. Under the distraction exception, a landowner's duty of care is not negated by an open and obvious condition when the landowner has reason to expect that the invitee's attention may be distracted from such a condition. See *American National Bank & Trust Co. v. National Advertising Co.*, 149 Ill. 2d 14, 27-29 (1992).

For example, in *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430 (1990), our supreme court held that the defendant owed

the plaintiff a duty, even though the plaintiff's injury arose from an open and obvious danger, because the defendant should have foreseen that the plaintiff could have been distracted from the danger. In *Deibert*, the plaintiff tripped in a rut outside a bathroom door at a construction site. Instead of looking down at the rut as he exited the bathroom, the plaintiff was looking above him because other workers often threw construction panels off a balcony near and above the bathroom. The *Deibert* court explained that, under such circumstances, a reasonable person would have been distracted from the rut. *Deibert*, 141 Ill. 2d at 438-40.

Similarly, in *Ward*, our supreme court held that the plaintiff could recover under the distraction exception for injuries he sustained while walking into a five-foot-tall post near an exit door of a department store. The court explained that, although the post was in plain view, the store should have foreseen that a customer could collide with it while carrying merchandise from the store. Therefore, even though the post was obvious, the store had a duty to warn the plaintiff against or otherwise protect the plaintiff from the danger of the post. *Ward*, 136 Ill. 2d at 155-56.

We find that this case is distinguishable from *Ward*, *Deibert*, and other distraction-exception cases. In those cases, the plaintiffs were either distracted by some event or thing that was out of their control or "forgot" that the danger existed. For example, in *Deibert*, the plaintiff was distracted by the possibility of falling construction panels, a real danger. Meanwhile, in *Ward*, the plaintiff was carrying a large object in front of him and could not see the pole. The *Ward* court said that, under the circumstances, it was reasonably foreseeable that a customer would "forget" about the pole. *Ward*, 136 Ill. 2d at 152-53.

In this case, however, there was no outside event or thing to draw Mr. Rivas's attention from the drywall. Indeed, in his deposition Mr. Rivas did not state that he failed to discover the drywall, forgot about the drywall while he was looking at the window, or that he inadvertently bumped into it, which caused it to tip over. See *Deibert*, 141 Ill. 2d at 435-36 (test is whether landowner had reason to expect that plaintiff would be distracted in such a way that he would forget about the obvious danger, fail to protect himself against it, or fail to discover the danger). Rather, Mr. Rivas acknowledges that he touched the drywall and attempted to pull it away from the window so that he could get a better look at the window frame. Consequently, here there was no distraction. Mr. Rivas knew exactly what he was doing while he was doing it, and nothing distracted him from, or interfered with, his actions.

■ Finally, the plaintiffs argue that public policy factors favor a reversal of the trial court's order. The plaintiffs assert that the magnitude of the burden on Westfield to warn them of the dangers of the drywall was slight. Further, the consequences of placing such a burden on the defendant were not great, as such a precaution would not have required great expense or an unreasonable effort.

Initially, we note that the plaintiffs do not offer any suggestions as to what action Westfield should have taken to protect them from the drywall. We find, however, that no such warnings were necessary here. As we previously explained, the drywall panels were large in size. Further, the panels were in a large stack that was leaning against a wall. We find that a person of reasonable intelligence would not need a warning to recognize the danger that the stack could fall if tampered with.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

DOYLE and THOMAS, JJ., concur.