749 N.E.2d 992 (2001)
321 Ill. App.3d 946
255 Ill.Dec. 510
Rhonda FIUMETTO, Plaintiff-Appellant,
v.
GARRETT ENTERPRISES, INC., and Claudia Dunbar Garrett, Defendants-Appellees.
No. 2-00-0456.
Appellate Court of Illinois, Second District.
April 25, 2001.
*996 Carey M. Stein, Ashman & Stein, Chicago, for Rhonda K. Fiumetto.
Robert T. O'Donnell, Eiden & O'Donnell, Ltd., Vernon Hills, for Claudia Dunbar Garrett, Garrett Enterprises, Inc.
Justice GROMETER delivered the opinion of the court:
Plaintiff, Rhonda Fiumetto, appeals an order of the circuit court of Lake County dismissing her two-count second amended complaint against defendants, Garrett Enterprises, Inc. (the corporation), and Claudia Dunbar Garrett (Garrett) (collectively defendants). In count I, plaintiff asserted an action for retaliatory discharge based on violations of portions of the Unemployment Insurance Act (Unemployment Act) (820 ILCS 405/100 et seq. (West 1996)). In count II, plaintiff sought recovery on the theory that her discharge constituted tortious interference with a business advantage. Plaintiff also appeals a grant of partial summary judgment made by the trial court prior to the filing of her second amended complaint, holding that plaintiff was not entitled to pierce the corporate veil and impose liability on Garrett individually. For the following reasons, we reverse in part, affirm in part, and remand this case for further proceedings.

I. BACKGROUND
Plaintiff was employed as a dance and gymnastics instructor by Garrett Enterprises, Inc., working between 16 and 28 hours per week. The availability of work diminished over the summer, as did the number of hours plaintiff worked; however, she was scheduled to work late in July 1997. Plaintiff alleges that on July 21, 1997, she informed Garrett that she had filed for unemployment. According to plaintiff, Garrett replied, "This is the end to a bad marriage. I can't believe you filed for unemployment. * * * [Y]ou're going to cost me $100 a week." Plaintiff was then terminated. Thereafter, Garrett contested plaintiff's unemployment claim and, during that proceeding, allegedly admitted that plaintiff was terminated for filing for unemployment. Garrett filed an answer disputing plaintiff's version of events.
Plaintiff was employed with the business when Garrett purchased it in 1994. Garrett was the sole shareholder and president of the corporation. No director's meetings were held. Garrett infused money into the corporation through a series of loans. Subsequent to the initiation of this action, Garrett sold all of the assets of the corporation and used some of the proceeds to satisfy loans from herself and her ex-husband. Additional facts will be discussed as they relate to the issues raised by the parties.

II. RETALIATORY DISCHARGE
Plaintiff first contends that the trial court erred in dismissing her claim for retaliatory discharge pursuant to section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 1998). The propriety of a dismissal under section 2-615 is a question of law, which we review de novo. Board of Directors of Bloomfield *997 Club Recreation Ass'n v. Hoffman Group, Inc., 186 Ill.2d 419, 424, 238 Ill.Dec. 608, 712 N.E.2d 330 (1999). In order to establish a cause of action for retaliatory discharge, plaintiffs must demonstrate that they were discharged in retaliation for their activities and that the discharge violated a clear mandate of public policy. Hartlein v. Illinois Power Co., 151 Ill.2d 142, 160, 176 Ill.Dec. 22, 601 N.E.2d 720 (1992). Retaliatory discharge actions have traditionally been allowed in two situations: when an employee is discharged for seeking workers' compensation benefits and when an employee is discharged for reporting misconduct by the employer. Howard v. Zack Co., 264 Ill.App.3d 1012, 1022, 202 Ill.Dec. 447, 637 N.E.2d 1183 (1994). It is undisputed that plaintiff was discharged, and plaintiff has alleged that the motivation for this discharge was retaliation for seeking unemployment benefits. Hence, the issue presented here is whether a discharge in retaliation for seeking benefits under the Unemployment Act (820 ILCS 405/100 et seq. (West 1996)) violates public policy such that it supports a cause of action for retaliatory discharge. We conclude that it does.
Plaintiff asserts that her discharge violated public policy as expressed in the Unemployment Act. See 820 ILCS 405/100 (West 1996). The Unemployment Act contains the following extensive statement of its underlying purpose:
"As a guide to the interpretation and application of this Act the public policy of the State is declared as follows: Economic insecurity due to involuntary unemployment has become a serious menace to the health, safety, morals and welfare of the people of the State of Illinois. Involuntary unemployment is, therefore, a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. Poverty, distress and suffering have prevailed throughout the State because funds have not been accumulated in times of plentiful opportunities for employment for the support of unemployed workers and their families during periods of unemployment, and the taxpayers have been unfairly burdened with the cost of supporting able-bodied workers who are unable to secure employment. Farmers and rural communities particularly are unjustly burdened with increased taxation for the support of industrial workers at the very time when agricultural incomes are reduced by lack of purchasing power in the urban markets. It is the considered judgment of the General Assembly that in order to lessen the menace to the health, safety and morals of the people of Illinois, and to encourage stabilization of employment, compulsory unemployment insurance * * * is necessary." 820 ILCS 405/100 (West 1996).
Thus, the plain language of the Unemployment Act indicates that its purpose is to lessen the burden of unemployment upon unemployed workers. See Chicago Transit Authority v. Didrickson, 276 Ill.App.3d 773, 777, 213 Ill.Dec. 398, 659 N.E.2d 28 (1995); Jones v. Department of Employment Security, 276 Ill.App.3d 281, 284, 212 Ill.Dec. 796, 657 N.E.2d 1141 (1995). It is well established that the Unemployment Act is remedial in nature. See, e.g., Bailey & Associates, Inc. v. Department of Employment Security, 289 Ill.App.3d 310, 318, 225 Ill.Dec. 541, 683 N.E.2d 1204 (1997); Howard v. Forbes, 185 Ill.App.3d 148, 151, 133 Ill.Dec. 474, 541 N.E.2d 685 (1989). As a remedial act, it must be liberally construed. Bridgestone/Firestone, Inc. v. Aldridge, 179 Ill.2d 141, 155, 227 Ill.Dec. 753, 688 *998 N.E.2d 90 (1997); Bethania Ass'n v. Jackson, 262 Ill.App.3d 773, 777, 200 Ill.Dec. 332, 635 N.E.2d 671 (1994).
The Unemployment Act, however, does not expressly grant a private right of action for individuals discharged in retaliation for seeking unemployment benefits. 820 ILCS 405/100 et seq. (West 1996). This omission does not necessarily resolve this issue against plaintiff. Fisher v. Lexington Health Care, Inc., 188 Ill.2d 455, 460, 243 Ill.Dec. 46, 722 N.E.2d 1115 (1999). In appropriate circumstances, a private right of action may be implied from a statute. Rodgers v. St. Mary's Hospital, 149 Ill.2d 302, 308, 173 Ill.Dec. 642, 597 N.E.2d 616 (1992). The existence of such a right of action may be implied if "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115.
In Fisher, the supreme court emphasized that employment-at-will is the general rule in Illinois and that the tort of retaliatory discharge provides only a narrow exception. Fisher, 188 Ill.2d at 467, 243 Ill.Dec. 46, 722 N.E.2d 1115. The court noted that it has "consistently sought to restrict" this tort. Fisher, 188 Ill.2d at 467, 243 Ill.Dec. 46, 722 N.E.2d 1115. In the absence of explicit legislative authority, courts must hesitate to imply these actions. Fisher, 188 Ill.2d at 468, 243 Ill. Dec. 46, 722 N.E.2d 1115. However, the Fisher court also reaffirmed that private rights of action could be implied in appropriate circumstances. Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115. Indeed, our supreme court recently pronounced that "[i]mplied private rights of action are an established feature of our jurisprudence." Noyola v. Board of Education, 179 Ill.2d 121, 128, 227 Ill.Dec. 744, 688 N.E.2d 81 (1997). Thus, while a court should not lightly conclude that a private right of action is implied by a statute, if the four-prong test set forth in Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115, is satisfied, such a right exists under Illinois law.
Under the first prong of this test, plaintiffs must be members of the class that the statute was intended to benefit. Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115. The purpose of the Unemployment Act must be considered as a whole. Fisher, 188 Ill.2d at 462-63, 243 Ill.Dec. 46, 722 N.E.2d 1115. The primary purpose of the Unemployment Act is to lessen the burden of unemployment upon unemployed workers. Wadlington v. Mindes, 45 Ill.2d 447, 452, 259 N.E.2d 257 (1970), quoting Illinois Bell Telephone Co. v. Board of Review of the Department of Labor, 413 Ill. 37, 43, 107 N.E.2d 832 (1952) ("The primary purpose of the Illinois Unemployment [Insurance] Act is to relieve `economic distress caused by involuntary unemployment'"). Plaintiff, as an unemployed person, is clearly a member of the class for whose benefit the statute was enacted.
Defendants argue that plaintiff is not a member of this class because she has not filed this action as a person seeking interim monetary relief to alleviate the burden of being unemployed. Additionally, according to defendants, plaintiff has already availed herself of the proper remedy by seeking benefits under the Unemployment Act (820 ILCS 405/100 (West 1996)). Defendants read this prong too narrowly and ignore the fact that, at the time of her discharge, plaintiff was an unemployed person seeking unemployment insurance. *999 Whether she filed the present action as a person seeking interim benefits or as a person seeking compensation for a retaliatory discharge sheds no additional light upon whether plaintiff is a member of the class protected by the Unemployment Act. See Midgett v. Sackett-Chicago, Inc., 105 Ill.2d 143, 146, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984) (where the plaintiff, alleging he was discharged for filing a workers' compensation claim, filed an action for retaliatory discharge after the workers' compensation claim had been settled). The mere fact that plaintiff was an unemployed person places her squarely within the class the statute was intended to benefit.
The second prong of the test requires that the injury suffered by the plaintiff be one that the statute is designed to protect. Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115. Here, we note that the Unemployment Act is intended to provide interim economic relief to persons who become unemployed. Wadlington, 45 Ill.2d at 452, 259 N.E.2d 257. Plaintiff alleged that she had been earning $18.25 per hour. Thus, plaintiff's unemployment caused her to suffer a significant reduction in income. Alleviating the burden caused by such a reduction is the evil the Unemployment Act seeks to remedy. See 820 ILCS 405/100 (West 1996). Being discharged for seeking benefits obviously compounds this problem. In particular, it turns a temporary period of unemployment into a permanent one, subjecting the employee to continued economic distress. Furthermore, if an employer is allowed to threaten an employee with termination, the employee might be dissuaded from seeking benefits. Terminating one employee might cause other employees to refrain from seeking benefits during periods of unemployment. Thus, the defendants' conduct, as alleged, would serve to perpetuate the injury that the Unemployment Act seeks to cure. Cf. Kelsay v. Motorola, Inc., 74 Ill.2d 172, 184, 23 Ill. Dec. 559, 384 N.E.2d 353 (1978) ("[W]e cannot accept a construction of section 11 which would allow employers to put employees in a position of choosing between their jobs and seeking their remedies under the [Workers' Compensation] Act" [(Ill. Rev. Stat. 1973, ch. 48, par. 138.1 et seq.)]. Accordingly, defendants' argument that plaintiff's injuries are unrelated to those that the Unemployment Act was designed to prevent is untenable.
Third, implying a cause of action must be consistent with the underlying purpose of the statute. Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115. As noted previously, the purpose of the Unemployment Act is to lessen the burden of unemployment upon unemployed workers. 820 ILCS 405/100 (West 1996). The Unemployment Act is remedial in nature. Bailey & Associates, Inc., 289 Ill.App.3d at 318, 225 Ill.Dec. 541, 683 N.E.2d 1204. Where an act is remedial, a private right of action is likely consistent with its purpose. See Davis v. Dunne, 189 Ill.App.3d 739, 743, 136 Ill.Dec. 1015, 545 N.E.2d 539 (1989); Rhodes v. Mill Race Inn, Inc., 126 Ill.App.3d 1024, 1027, 81 Ill.Dec. 793, 467 N.E.2d 915 (1984). As discussed above, a private right of action would both benefit those that the statute was enacted to protect and dissuade employers from interfering with employees attempting to seek benefits under the Unemployment Act. Thus, a private right of action is consistent with the underlying purpose of the statute. Cases where a private right of action has been found inconsistent with the purpose of a statute generally have involved situations where such a right would impede the operation of the statute in some way. For example, where the legislature intended to vest an agency with broad discretion to address a *1000 particular problem, one court refused to imply a private right of action because it would interfere with that discretion. Moore v. Lumpkin, 258 Ill.App.3d 980, 995-98, 196 Ill.Dec. 817, 630 N.E.2d 982 (1994). Similarly, where the purpose of a statute was to induce restaurant patrons to provide voluntary aid to choking victims, a private right of action was held inconsistent, presumably because any aid rendered would no longer be voluntary. Parra v. Tarasco, Inc., 230 Ill.App.3d 819, 825, 172 Ill.Dec. 516, 595 N.E.2d 1186 (1992). In the present case, allowing a private right of action in no way impedes the Unemployment Act's primary purpose of lessening the burden of unemployment. Thus, a private right of action is consistent with the underlying purpose of the Unemployment Act.
Finally, implying a private right of action is necessary to provide an adequate remedy for a violation of the statute. Fisher, 188 Ill.2d at 460, 243 Ill. Dec. 46, 722 N.E.2d 1115. A private right of action is appropriate where a statute would, as a practical matter, be ineffective if the right were not implied. Abbasi v. Paraskevoulakos, 187 Ill.2d 386, 395, 240 Ill.Dec. 700, 718 N.E.2d 181 (1999). That a statute provides for criminal penalties does not preclude the implication of a private right of action. Kelsay, 74 Ill.2d at 185, 23 Ill.Dec. 559, 384 N.E.2d 353. In the present case, a private right of action is necessary to make the Unemployment Act effective. Absent such a right, employers could freely coerce employees to refrain from seeking benefits under the Unemployment Act through threats of termination. Employers have a motivation to do so, because the amount they are required to contribute toward unemployment insurance is dependent upon the amount of benefits received by their employees. Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security, 131 Ill.2d 23, 28-29, 136 Ill.Dec. 86, 544 N.E.2d 772 (1989).
Defendants point out that the Unemployment Act makes it a Class B misdemeanor for any person to "[a]ttempt to induce any individual * * * to refrain from claiming or accepting benefits * * * under this Act." 820 ILCS 405/2800 (West 1996). A Class B misdemeanor is punishable by a $1,500 fine (730 ILCS 5/5-9-1 (West 1998)) and imprisonment for not more than six months (730 ILCS 5/5-8-3 (West 1998)). Where the defendant is a corporation, of course, imprisonment is not possible. According to defendants, this provision provides an adequate remedy. However, an employer who is able to successfully coerce an employee to refrain from seeking unemployment insurance can also likely coerce the employee to refrain from reporting the coercion. In Corgan v. Muehling, 143 Ill.2d 296, 315, 158 Ill.Dec. 489, 574 N.E.2d 602 (1991), our supreme court noted that "[it] is unlikely that patients, injured by unqualified and unregistered psychologists, will initiate or pursue their complaints through the administrative or criminal justice system without a potential for a tangible reward." This reasoning carries even more force here. Absent a private right of action, employees not only would lack the potential for a tangible reward but also would run the risk of retaliation. Furthermore, keeping in mind that the Unemployment Act is remedial in nature (Howard, 185 Ill.App.3d at 151, 133 Ill.Dec. 474, 541 N.E.2d 685), imposing criminal sanctions on an employer does nothing to alleviate the plight of a discharged employee (Kelsay, 74 Ill.2d at 185, 23 Ill.Dec. 559, 384 N.E.2d 353).
Courts have often recognized that inadequate criminal penalties provide insufficient motivation for an entity to comply with a statute. Compare Moore, 258 Ill. *1001 App.3d at 999, 196 Ill.Dec. 817, 630 N.E.2d 982, and Kelsay, 74 Ill.2d at 185, 23 Ill. Dec. 559, 384 N.E.2d 353 (1978), with Stern v. Great Western Bank, 959 F.Supp. 478, 484 (N.D.Ill.1997) (holding $1,000 fine adequate to insure bank's compliance with confidentiality rules where a violation of the rules provided virtually no benefit to the bank). In the present case, not only is the penalty relatively minor but also the likelihood of its being imposed is reduced because the employee being coerced is likely the only individual in a position to report a violation. Some employers conceivably would be willing to risk sanctions under these circumstances to avoid their obligations under the Unemployment Act. See Kelsay, 74 Ill.2d at 185, 23 Ill.Dec. 559, 384 N.E.2d 353. As such, the implication of a private right of action is necessary to make the statute effective in a practical sense.
Defendants rely extensively on Fisher, 188 Ill.2d 455, 243 Ill.Dec. 46, 722 N.E.2d 1115, in support of their position. We find that case distinguishable. In that case, the supreme court was addressing whether a private right of action existed under the Nursing Home Care Act (210 ILCS 45/3-608 (West 1996)). Fisher, 188 Ill.2d at 456, 243 Ill.Dec. 46, 722 N.E.2d 1115. The plaintiffs were nursing home employees who were harassed and discharged after providing information during an investigation concerning the death of a resident. Fisher, 188 Ill.2d at 457-58, 243 Ill.Dec. 46, 722 N.E.2d 1115. The Nursing Home Care Act contained a provision making such retaliation unlawful but did not grant employees who were retaliated against a right to seek damages for such retaliation. 210 ILCS 45/3-608 (West 1996). Our supreme court concluded a private right of action could not be implied. Fisher, 188 Ill.2d at 468, 243 Ill.Dec. 46, 722 N.E.2d 1115.
The Nursing Home Care Act was intended to benefit nursing home residents by improving their care and treatment. Fisher, 188 Ill.2d at 461, 243 Ill.Dec. 46, 722 N.E.2d 1115. The Fisher plaintiffs were not nursing home residents and, thus, not members of the class the statute was intended to protect. Conversely, the Unemployment Act was implemented to lessen the burden of unemployment upon unemployed workers. 820 ILCS 405/100 (West 1996). Plaintiff, as an unemployed worker, is a member of the class the Unemployment Act was intended to benefit. Additionally, plaintiff, unlike the Fisher plaintiffs, suffered the type of injury the Unemployment Act was intended to prevent. Plaintiff was subjected to an economic burden arising out of her unemployment. The Nursing Home Care Act was intended to prevent abuse and neglect of residents, an injury that the Fisher plaintiffs did not suffer. Fisher, 188 Ill.2d at 462, 243 Ill.Dec. 46, 722 N.E.2d 1115.
The Nursing Home Care Act contains a provision requiring employees to report the abuse and neglect of residents. Fisher, 188 Ill.2d at 459, 243 Ill.Dec. 46, 722 N.E.2d 1115, citing 210 ILCS 45/2-107 (West 1996). Such an affirmative duty has been held to be an adequate safeguard to insure public policy is not violated. See Jacobson v. Knepper & Moga, P.C., 185 Ill.2d 372, 377-78, 235 Ill.Dec. 936, 706 N.E.2d 491 (1998) (rejecting a retaliatory discharge claim where an attorney was discharged for reporting ethical violations because the ethical rules imposed a duty upon the attorney to report such violations). The Unemployment Act imposes no affirmative duty to report retaliatory conduct. 820 ILCS 405/100 et seq. (West 1996). Because no individual has a duty to report violations of the Unemployment Act, it is more likely that retaliatory conduct will remain hidden and unremedied. Moreover, the Nursing Home Care Act *1002 granted a private cause of action allowing residents to seek damages for violations of that statute. Fisher, 188 Ill.2d at 461, 243 Ill.Dec. 46, 722 N.E.2d 1115. Thus, the possibility of actions brought by residents served to deter violations of the Nursing Home Care Act. Conversely, in the present case, there is no alternate class of potential plaintiffs to deter employers from violating the Unemployment Act.
Furthermore, as a practical matter, a violation of the Nursing Home Care Act is more visible, and hence more likely to be reported, than retaliation for seeking unemployment insurance benefits. Threats and retaliation can take place without any witnesses other than the employer and employee. In a nursing home, "`"friends, relatives and community supporters can regularly keep an eye on the conditions existing in facilities."` [Citation.]" Fisher, 188 Ill.2d at 465, 243 Ill.Dec. 46, 722 N.E.2d 1115. Thus, others are available to report the abuse and neglect of residents, which are the primary evils the Nursing Care Home Act is aimed at curing. Fisher, 188 Ill.2d at 462, 243 Ill.Dec. 46, 722 N.E.2d 1115.
Finally, we note that violations of the Nursing Home Care Act are punishable by a fine over six times greater than that imposed for retaliation against unemployment claimants. The Nursing Home Care Act makes such conduct punishable by a fine of up to $10,000 and may also result in the suspension or revocation of a facility's license. Fisher, 188 Ill.2d at 466-67, 243 Ill.Dec. 46, 722 N.E.2d 1115. Retaliation against unemployment claimants carries a fine of up to $1,500. 820 ILCS 405/2800 (West 1996).
Thus, the situation confronting the Fisher court was markedly different from the instant case, and defendants' reliance on that case is misplaced. We believe the reasoning that supports implying a private right of action under the Workers' Compensation Act provides sounder guidance. See Kelsay, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353. Applying the four-pronged test set forth in Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115, the parallels between the two acts become clear. The purpose of the Workers' Compensation Act is to provide "efficient remedies for and protection of employees and, as such, [the Workers' Compensation Act] promotes the general welfare of th[e] State." Kelsay, 74 Ill.2d at 181, 23 Ill. Dec. 559, 384 N.E.2d 353. Thus, like the Unemployment Act, the Workers' Compensation Act is intended to benefit employees, who are the individuals to whom a cause of action is granted, and the first prong of the test is satisfied. Regarding the second prong, that the injury is one the statute was designed to prevent (Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115), both Acts provide mechanisms for employees to seek compensation for matters related to their employment. Being discharged for seeking workers' compensation benefits, like being discharged for seeking unemployment benefits, would compound the injuries the acts seek to alleviate. Regarding the third prong, that a cause of action is consistent with the purpose of the statute (Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115), a private right of action under both acts would dissuade an employer from interfering with employees attempting to invoke their protections. Furthermore, the Workers' Compensation Act, like the statute at issue here, is remedial in nature. Kelsay, 74 Ill.2d at 181, 23 Ill.Dec. 559, 384 N.E.2d 353.
Finally, the reasons a private cause of action is necessary under the Workers' Compensation Act are identical to the reasons one is necessary under the Unemployment Act. As in the present case, an *1003 employer facing a workers' compensation claim has a financial incentive to dissuade the employee from going forward with the claim. See Palos Electric Co. v. Industrial Comm'n, 314 Ill.App.3d 920, 923, 247 Ill. Dec. 548, 732 N.E.2d 603 (2000). While both acts forbid retaliation (820 ILCS 305/4(h) (West 1998); 820 ILCS 405/2800(A)(7) (West 1996)), in neither case will this sanction be imposed unless the employee reports the retaliation. In both cases, a retaliating employer could also coerce an employee to refrain from reporting the retaliation. In the absence of a private right of action, employers, subject to only limited criminal liability, which may not even be imposed, would be able to put employees in a position where they are required to choose between their jobs and their rights under the Unemployment Act. See Kelsay, 74 Ill.2d at 184, 23 Ill.Dec. 559, 384 N.E.2d 353.
Furthermore, we note that both acts create a body to adjudicate claims made under them. The Workers' Compensation Act is enforced through the Industrial Commission (820 ILCS 305/13 (West 1998)), while unemployment claims are adjudicated by the Department of Employment Security (820 ILCS 405/800 (West 1996)). Although both acts provide an enforcement mechanism, both mechanisms are dependent upon an employee initiating a complaint. Thus, if an employer is able to coerce an employee to refrain from claiming benefits and reporting threats, both mechanisms are ineffective.
In Kelsay, the supreme court reasoned that the workers' compensation system "would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the [Workers' Compensation] Act." Kelsay, 74 Ill.2d at 182, 23 Ill.Dec. 559, 384 N.E.2d 353. This reasoning is equally applicable to the unemployment insurance system. The implication of a private right of action under the Unemployment Act satisfies the four-part test set forth in Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115, and serves the same policies underlying our supreme court's decision in Kelsay, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353. Accordingly, we conclude that such an action is implied under the Unemployment Act.

III. TORTIOUS INTERFERENCE WITH A BUSINESS ADVANTAGE
In the second count of her complaint, plaintiff attempts to set forth against Garrett individually a cause of action for tortious interference with a business advantage, based on Garrett's alleged violation of section 2800 of the Unemployment Act. 820 ILCS 405/2800 (West 1996). Section 2800 provides that, if an entity that violates the Unemployment Act "is a corporation, the president * * * shall * * * be subject to the aforesaid [criminal] penalties for the violation of any provisions of this Section of which he * * * had or, in the exercise of his * * * duties, ought to have had knowledge." 820 ILCS 405/2800(B) (West 1996). Thus, if Garrett violated the Unemployment Act in her capacity as president, she committed a Class B misdemeanor. 820 ILCS 405/2800(B) (West 1996). Plaintiff's theory, although somewhat ambiguous, is that Garrett's action in discharging plaintiff was a violation of section 2800 and, because Garrett is individually liable under the statute, her actions also constitute an interference with the business relationship between plaintiff and the corporation.
Plaintiff's argument suffers from two fatal flaws. First, in count II of her complaint, plaintiff has alleged that Garrett was acting in her official capacity *1004 when she discharged plaintiff. It is well established that a party cannot tortiously interfere with a contract to which he is a party. Douglas Theater Corp. v. Chicago Title & Trust Co., 288 Ill.App.3d 880, 884, 224 Ill.Dec. 249, 681 N.E.2d 564 (1997). Since Garrett was acting in her official capacity, she was acting on behalf of the corporation. Thus, plaintiff's claim amounts to an assertion that the corporation tortiously interfered with a contract to which it was a party. This claim must be rejected.
Second, inherent in plaintiff's argument is the proposition that a private right of action against corporate officers can be implied under the Unemployment Act. We reject this contention. One of the elements necessary to imply a private right of action under a statute is that a private action is necessary to provide an adequate remedy. Fisher, 188 Ill.2d at 460, 243 Ill.Dec. 46, 722 N.E.2d 1115. In the preceding section of this opinion, we held that such a right was implied against employers. Given the availability of this remedy against the actual employer, and the incentive it provides for complying with the statute, there is no need to imply a second right of action against corporate officers in their individual capacity.
Plaintiff argues that, if the trial court was correct in granting summary judgment in favor of Garrett on the issue of piercing the corporate veil, then Garrett must be a third party capable of interfering with the contract between plaintiff and the corporation. In this count of her complaint, plaintiff seeks to impose liability upon Garrett in her capacity as president for conduct alleged to violate the Unemployment Act. See 820 ILCS 405/2800 (West 1996). Piercing the corporate veil involves Garrett's conduct regarding the establishment and maintenance of the corporate entity. See Jacobson v. Buffalo Rock Shooters Supply, Inc., 278 Ill.App.3d 1084, 1088, 215 Ill.Dec. 931, 664 N.E.2d 328 (1996). Whether plaintiff can pierce the corporate veil is immaterial as to whether Garrett can be held individually liable under the Unemployment Act in her individual capacity.
Finally, plaintiff's contention that the business judgment rule does not bar this claim is inapposite. The business judgment rule is merely a presumption that corporate officers make business decisions in good faith. Ferris Elevator Co. v. Neffco, Inc., 285 Ill.App.3d 350, 354, 220 Ill.Dec. 906, 674 N.E.2d 449 (1996). Negating this presumption says nothing as to whether plaintiff has adequately pleaded a cause of action. We conclude that plaintiff has failed to state a cause of action in the second count of her complaint.

IV. PIERCING THE CORPORATE VEIL
Prior to dismissing plaintiff's second amended complaint, the trial court granted partial summary judgment for defendant, holding that plaintiff could not impose liability on Garrett personally. Summary judgment is appropriate only where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Amsted Industries, Inc. v. Pollak Industries, Inc., 65 Ill.App.3d 545, 549, 22 Ill.Dec. 73, 382 N.E.2d 393 (1978). Because it is a drastic means of disposing of litigation, it should only be granted where the movant's right to judgment is clear and free from doubt. Rivas v. Westfield Homes of Illinois, Inc., 295 Ill.App.3d 304, 307-08, 230 Ill.Dec. 193, 692 N.E.2d 1359 (1998). In assessing the propriety of a grant of summary judgment, the record must be construed liberally in favor of the opposing party and strictly against the movant. Largosa v. Ford Motor Co., 303 Ill.App.3d 751, 753, 237 Ill.Dec. *1005 179, 708 N.E.2d 1219 (1999). Review is de novo. Corona v. Malm, 315 Ill.App.3d 692, 694, 248 Ill.Dec. 818, 735 N.E.2d 138 (2000).
In order to pierce the corporate veil, a plaintiff must demonstrate the following: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, (2) and circumstances must be such that an adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences." Pederson v. Paragon Pool Enterprises, 214 Ill.App.3d 815, 819-20, 158 Ill.Dec. 371, 574 N.E.2d 165 (1991). Piercing the corporate veil is an equitable remedy. Graham v. Mimms, 111 Ill. App.3d 751, 768, 67 Ill.Dec. 313, 444 N.E.2d 549 (1982). The trial court's summary judgment order appears to be based entirely on the first prong of this test. Accordingly, we will confine our review to this prong as well.
Several factors are relevant in determining whether a sufficient unity of interest exists between a corporation and an individual to warrant piercing the corporate veil. These factors include "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation at the time; (6) nonfunctioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation is a mere facade for the operation of dominant stockholders." Ted Harrison Oil Co. v. Dokka, 247 Ill.App.3d 791, 795, 187 Ill.Dec. 441, 617 N.E.2d 898 (1993). Generally, the decision to disregard the corporate entity will not rest upon a single factor. Hills of Palos Condominium Ass'n v. I-Del, Inc., 255 Ill.App.3d 448, 480, 193 Ill.Dec. 760, 626 N.E.2d 1311 (1993). While courts are normally reluctant to pierce the corporate veil (In re Estate of Wallen, 262 Ill.App.3d 61, 68, 199 Ill.Dec. 359, 633 N.E.2d 1350 (1994)), the issue before us is merely whether sufficient evidence exists in the record to preclude summary judgment against plaintiff on this issue.
Such evidence does exist. Construing the record liberally in plaintiff's favor, significant evidence indicates the corporation was undercapitalized from its inception. The capitalization of a corporation is a major factor in assessing whether a legitimate separate corporate entity existed. McCracken v. Olson Cos., 149 Ill.App.3d 104, 111, 102 Ill.Dec. 594, 500 N.E.2d 487 (1986). The policy behind this consideration has been described as follows:
"`"If a corporation is organized and carries on business without substantial capital in such a way that the corporation is likely to have no sufficient assets available to meet its debts, it is inequitable that shareholders should set up such a flimsy organization to escape personal liability. * * * It is coming to be recognized as the policy of the law that shareholders should in good faith put at the risk of the business unencumbered capital reasonably adequate for its prospective liabilities. * * * "` [Citation.]" Gallagher v. Reconco Builders, Inc., 91 Ill.App.3d 999, 1005, 47 Ill.Dec. 555, 415 N.E.2d 560 (1980).
To determine whether a corporation is adequately capitalized, one must compare the amount of capital to the amount of business to be conducted and obligations to be fulfilled. Jacobson, 278 Ill.App.3d at 1090, 215 Ill.Dec. 931, 664 N.E.2d 328. Absent adequate capitalization, a corporation becomes a mere liability shield, rather than an independent entity capable of carrying on its own business.
*1006 In her deposition, Garrett testified that the corporation was set up with a $1,000 capital investment in January 1995. Garrett also testified that the corporation had five employees when she bought it in 1995. In July of that year, the corporation received the first of a series of monthly loans. These loans ranged from between $1,000 and $4,000, the last occurring in July 1997. Given that the corporation had five employees, it is reasonable to infer that payroll expenses were more than de minimis. Additionally, at the time she was discharged, plaintiff was making over $18 per hour, which further supports the inference that the corporation's payroll was a significant expense. Finally, the corporation started receiving significant sums through loans taken shortly after its inception. Nothing in the record indicates any change in circumstances between incorporation and the first loan that would explain the necessity for these loans. These facts suggest that the initial $1,000 capital contribution was wholly insufficient for the corporation to do business. Thus, a reasonable trier of fact could conclude that the corporation was undercapitalized.
Furthermore, it is uncontroverted that no director's meetings were held. The trial court noted that this was not unusual, since Garrett was the sole shareholder. For summary judgment purposes, however, plaintiff was entitled to have the record construed in her favor. The trial court's explanation of this fact amounted to construing the record in Garrett's favor. See Largosa, 303 Ill.App.3d. at 753, 237 Ill.Dec. 179, 708 N.E.2d 1219. Thus, the record also contains evidence that Garrett disregarded the corporate formalities.
Finally, many corporate documents were not executed until after this action was filed and then ratified. While this action was not per se improper (see Dannen v. Scafidi, 75 Ill.App.3d 10, 15-17, 30 Ill.Dec. 899, 393 N.E.2d 1246 (1979)), this informality indicates at least a possible neglect for the necessary corporate formalities. The casual manner in which these matters were handled supports an inference that the corporation was a mere facade through which Garrett, as the dominant stockholder, conducted business.
In her brief, Garrett argues that plaintiff was never misled into believing she was working for Garrett personally and never relied on Garrett personally to pay her for anything that was due her. Because plaintiff seeks recovery for a tort, we find these considerations to be of little significance. When a party enters into a contractual relationship with a corporation, a relevant consideration is whether the party is misled into believing a shareholder or director is also a party. Philip S. Lindner & Co. v. Edwards, 13 Ill.App.3d 365, 369, 300 N.E.2d 283 (1973). However, tort victims, like plaintiff, do not choose to become victims of particular tortfeasors or rely upon the tortfeasor's ability to compensate them. The significance of the distinction between tort victims and parties to a contract may be summarized as follows:
"The obvious difference between consensual and nonconsensual transactions is that the claimants in consensual transactions generally have chosen the parties with whom they have dealt and have some ability * * * to protect themselves from loss. For example, the fact that a company is undercapitalized can be overcome in many contractual settings, because the parties can allocate a risk of financial failure as they see fit. But in nonconsensual cases, there is `no element of voluntary dealing, and the question is whether it is reasonable for businessmen to transfer a risk of loss or injury to members of the general public through the device of conducting business in the name of a corporation that *1007 may be marginally financed.' [Citation.]" Cascade Energy & Metals Corp. v. Banks, 896 F.2d 1557, 1577 (10th Cir. 1990).
Because the present case involves a tort, whether plaintiff relied on Garrett to satisfy the corporation's obligations is irrelevant. Material issues of fact exist regarding this issue; therefore, the trial court erred in granting summary judgment.

V. CONCLUSION
For the foregoing reasons, we reverse the trial court's grant of summary judgment regarding Garrett's individual liability and the dismissal of count I of plaintiff's complaint, affirm the trial court's dismissal of count II, and remand the cause for further proceedings.
Affirmed in part and reversed in part; cause remanded.
HUTCHINSON, P.J., and McLAREN, J., concur.